UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| SAFE AIR FOR EVERYONE, ALEX H., by and through her parents and guardians, CINDY MILLER, HELEN WOOTTON, MARY LANG, JIM PRALL, GLENNA GARRISON, DORIS YODER, MIKE DARRAR, DEBRA STRAHM, and EDWARD BOWERS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>STATE OF IDAHO, and the IDAHO STATE DEPARTMENT OF AGRICULTURE, a state agency,<br><br>                              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. CV06-68-N-EJL<br><br>  MEMORANDUM<br>  ORDER |

Pending before the Court in the above-entitled matter is the Defendants' motion to dismiss. The Court requested additional briefing and held a hearing on the motion to dismiss. The Court has heard and reviewed the parties' briefing, their arguments, and the entire record herein. The matter is now ripe for the Court's consideration.

**Factual and Procedural Background**

Plaintiffs are Safe Air For Everyone ("SAFE"), a private foundation located in Sandpoint, Idaho, and several named individuals who reside in north Idaho.[1] Defendants are the State of Idaho

---

[1] The class of Plaintiffs are minor children and adults with either a medically diagnosed airwave disease, cystic fibrosis, or chronic heart disease who live in the class area.

MEMORANDUM ORDER - Page 1

and the Idaho Department of Agriculture ("ISDA").[2]  The claims raised here relate to the burning

of fields and wheat stubble in central and northern Idaho by farmers which generally takes place

during the months of August, September, and October.  The burning generates smoke which

Plaintiffs allege creates health hazards upon the citizens of neighboring communities in particular

those individuals with certain medical conditions such as the Plaintiffs.  The State of Idaho has

prescribed a regulatory scheme whereby the ISDA issues permits for such burning entitled the Idaho

Smoke Management and Crop Residue Disposal Act ("Smoke Management Plan"), Idaho Code

§ 22-4801, *et seq.*

Plaintiffs' claims are based upon two federal statutes, 1) the Americans with Disabilities Act

("ADA") 42 U.S.C. § 12131, *et seq*, and 2) the Rehabilitation Act ("RA") 29 U.S.C. § 794, *et seq.*

Under the ADA Plaintiffs allege the Defendants have discriminated against them by "refusing

reasonable accommodations to Plaintiffs and putative Class members as disabled individuals through

their failure to consider and/or determine alternatives or modifications that would eliminate or

restrict agricultural burning in the State of Idaho.  Defendants' intentional disregard of Plaintiffs'

rights under the ADA and failure to accommodate them has caused Plaintiffs to be segregated from

the rest of the community and has precluded Plaintiffs from enjoying all rights, privileges and

accommodations available to all other citizens of Idaho."  (Dkt. No. 1, ¶ 123).  Under the RA,

Plaintiffs' allege the "Defendants have subjected plaintiffs to discrimination under a program

receiving federal financial assistance solely on the basis of their handicaps...."  (Dkt. No. 1, ¶ 129).

Plaintiffs filed a motion for temporary restraining order and preliminary injunction.  In response,

Defendants filed their motion to dismiss.  The Court denied the motion for a temporary restraining

---

[2]  The Defendants will collectively be referred to as "the State."

MEMORANDUM ORDER - Page 2

order (Dkt. No. 29) and the motion for preliminary injunction (Dkt. No. 43).  The Court also requested additional briefing on the motion to dismiss and held a hearing.

## Standard of Law

A motion to dismiss should be granted where the plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12.  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Van Buskirk v. Cable News Network, Inc., 284 F.3d 977 (9th Cir. 2002) (citing Rabang v. INS, 35 F.3d 1449, 1451 (9th Cir. 1994) (citing Buckey v. County of Los Angeles, 968 F.2d 791, 793-94 (9th Cir. 1992)).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  American Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114 (9th Cir. 2002) (citation omitted).

## Analysis

I.    Abrogation or Waiver of Immunity:

The Defendants argue dismissal of this action is proper because the State's Eleventh Amendment immunity has not been waived nor abrogated.  To determine whether Congress has validly abrogated a State's Eleventh Amendment immunity requires the Court to resolve: 1) whether Congress "unequivocally expressed its intent to abrogate" the immunity, and 2) if so, "whether Congress acted pursuant to a valid grant of constitutional authority."  Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000).  Congress clearly expressed its intent to abrogate State sovereign immunity in both the ADA and the RA.  See United States v. Georgia, 126 S.Ct. 877, 879 (2006); Seminole Tribe v. Florida, 517 U.S. 44, 68 (1996).  Thus, the question is whether Congress acted pursuant to a valid grant of constitutional authority in abrogating sovereign immunity.

MEMORANDUM ORDER - Page 3

The Plaintiffs' claims here are based upon the Equal Protection Clause of the Fourteenth Amendment.  The Ninth Circuit has recognized that Congress' enacted both the ADA and RA under the Fourteenth Amendment to prohibit discrimination against the disabled and both statutes were "within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court."  Clark v. State of California, 123 F.3d 1267, 1270 (9th Cir. 1997).  As such, the Ninth Circuit has "concluded that Congress validly abrogated the states' Eleventh Amendment sovereign immunity under Title II."  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1184 (9th Cir. 2003) (citing Clark, 123 F.3d at 1270, Dare v. California, 191 F.3d 1167, 1175 (9th Cir. 1999), Hason v. Medical Bd. Of Cal., 279 F.3d 1167, 1171 (9th Cir. 2002)) (citations omitted).  In light of Ninth Circuit precedent, this Court concludes that Congress validly abrogated sovereign immunity.[3]

II.     Plaintiffs' Claims:

    A.     Discrimination

The State contends that the motion to dismiss should be granted because the Plaintiffs have not alleged that the State's actions discriminated against Plaintiffs because of their disabilities; thus, there is no conduct violating Plaintiffs' constitutional rights.  The Court agrees.  The complaint contains factual allegations of the harm suffered by Plaintiffs as a result of the smoke caused by field burning but there is no allegation that the State's actions in allowing burning, issuing permits, and either failing to limit or eliminate burning were taken because of Plaintiffs' disabilities.  Instead,

---

[3] As to the RA claim, the Defendants argue that the State cannot both abrogate and, at the same time, waive its immunity pointing to the dissenting opinion of Judge O'Scannlain in Douglas v. California Dept. of Youth Authority, 271 F.3d 812, as amended, 271 F.3d 910 (9th Cir. 2001).  This argument is more suited for the appellate court to address as the case law is clear regarding waiver for claims raised under the RA.

MEMORANDUM ORDER - Page 4

Plaintiffs allege the Defendants failed to accommodate and/or modify the Smoke Management Plan to account for their disabilities and that failure constitutes discrimination.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA guarantees individuals the right to be free from discrimination. Thus, the threshold for an ADA claim is that there must be some discrimination based upon an individual's disability. The relevant inquiry asks whether the State's action denied disabled individuals meaningful access to state services, programs, and activities because of their disability. See Alexander v. Choate, 469 U.S. 287, 302 (1985); Crowder v. Kitagawa, 81 F.3d 1480, 1484 (9th Cir. 1996). Plaintiffs' here argue they have been denied access to the outdoors, public parks, streets, and the like as a result of the State's failure to accommodate their disabilities when implementing and administering the Smoke Management Program. Any failure by the State to accommodate or modify the Smoke Management Plan necessarily requires that the State first be required to provide such an accommodation or modification. The Plaintiffs maintain  accommodation is required by the ADA and RA because the State has chosen to regulate field burning; in other words, that because the State has undertaken the job of regulating field burning, the State is now under a duty to consider the needs of disabled individuals who will be impacted by the smoke and provide such accommodations as are necessary. This argument is an attempt to bypass the threshold questions of whether there is discrimination by the State and, second, whether the discrimination is based upon an individual's disability. Only after these determinations are made are the inquiries regarding accommodation and modification ripe. No such discrimination by the State has been alleged in this case.

Here, the Plaintiffs are provided the same benefits from the Smoke Management Plan as other non-disabled citizens. The "benefits" Plaintiffs seek to access are the use of parks, streets, and outdoor facilities in general. Their access is limited, they claim, because they suffer greater than other citizens when field burning occurs. While the Court does not dispute that Plaintiffs suffer a greater impact than other citizens from smoke in the air, their claims here fail because they have equal access to the benefit provided by the State by way of the Smoke Management Plan. The State is not required to assure the disabled greater benefits than provided to non-handicapped but only that all citizens are equally able to access the benefits of the services provided. Id. at 287. The State's Smoke Management Plan does not discriminate against disabled individuals based upon their disabilities by failing to consider and take into account any needs such individuals may require in order to access public services. Instead, the regulation provides equal access for all citizens to its benefits.

Plaintiffs counter the State's argument that the Smoke Management Plan is "neutral" asserting that "neutrality" does not remove the obligation that the regulation cannot discriminate. Again, Plaintiffs argue that because the State has "chosen to allow agricultural burning and to institute a permit program to regulate that activity, Defendants must administer that program in a non-discriminatory fashion." (Dkt. No. 16, pp. 16-17). While it is true that facially neutral regulations may violate the ADA where such regulations "unduly burden disabled persons," that is not the case before the Court here. See McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004). This case is not like the cases where the disabled individuals are subject to the government regulation or where the state is enforcing a regulation against the disabled individual. See McGary, 386 F.3d at 1269 (state enforcement of a city nuisance abatement ordinance against a disabled

MEMORANDUM ORDER - Page 6

individual held unconstitutional for failing to accommodate disabled); Crowder, 81 F.3d 1480, 1482 (9th Cir. 1996) (state law requiring all animals entering the state be quarantined held unconstitutional). In Crowder, the Ninth Circuit determined that the state's regulation itself caused the discriminatory impact upon the disabled in violation of the ADA. Here, the allegations are that the Plaintiffs have been denied access to public services as a result of the smoke produced by private individuals – not by the State or any State regulation. Unlike the facts in McGary and Crowder, this is not a case where a state requirement places a greater burden upon disabled individuals. Instead the challenge here is to a regulatory scheme which controls the actions of private individuals.

The Plaintiffs claims are instead more akin to those raised in Alexander v. Choate, 469 U.S. 287 (1985) where the Supreme Court determined that a neutral policy reducing the number of inpatient hospital days covered by Medicaid was not discrimination under the RA even though it had a greater impact on disabled individuals. As the State argues, this is a "benefits" case and the regulation of field burning benefits all citizens equally. Whether that benefit goes far enough is a question of public policy, not a claim under either the ADA or the RA. The State argues the Plaintiffs' suit seeks to provide Plaintiffs with a greater benefit from the State's regulation of smoke than afforded to other citizens by way of additional regulations or elimination of field burning all together. Plaintiffs counter this by arguing that the ADA is focused on eliminating barriers for the disabled and that by undertaking the administration of smoke the State must consider and accommodate for the needs of the disabled and regulate field burning in such a way that it does not discriminate against the disabled's ability to access public parks, streets, buildings, and the outdoors. The Supreme Court has rejected the "notion that all disparate-impact showings constitute prima facie cases" of discrimination. Id. at 287. What is required is that handicapped individuals be afforded

MEMORANDUM ORDER - Page 7

meaningful access to the benefit offered by the state, which sometimes requires reasonable accommodations in order for the disabled to access the benefit.  Id.  The Supreme Court made clear, however, that meaningful access does not require that the disabled receive a greater benefit but, instead, that the handicapped are provided equal access to the benefit offered by the state as provided to non-handicapped individuals.  Id.  This standard is met here.

The Plaintiffs also argue that the State improperly administered the Smoke Management Plan by violating its requirements when allowing certain burn days and, as a result, caused Plaintiffs to "suffer many of the classic problems associated with discrimination against persons with disabilities...[including] isolation, segregation, and inability to enjoy services and benefits enjoyed by [the non-disabled]."  (Dkt. No. 16, p. 18).  In support of this argument,  Plaintiffs point to paragraphs 1, 6, 10, 101-102, and 138-39 of the first amended complaint.  These paragraphs generally describe how the smoke impacts their lives and again alleges that the failure by the State to accommodate their disability in the Smoke Management Plan amounts to discrimination.  Absent from these paragraphs, however, is the allegation that the State has discriminated against disabled individuals based on their disability which would trigger the accommodation requirement.  Discrimination under the ADA or RA exists where the action results in unequal treatment of the disabled based upon their disability such that the disabled are not afforded equal access to public services.  Once discrimination is shown to exist, "the ADA's regulations mandate reasonable modifications to those policies in order to avoid discrimination on the basis of disability, at least when such modification would not fundamentally alter the nature of the services provided by the state."  Townsed v. Quasim, 328 F.3d 511, 517 (9th Cir. 2003) (citing Lovell v. Chandler, 303 F.3d 1039, 1054 (9th Cir.2002) (citing Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir.1996)).  Such

discrimination has not been alleged to have existed in this case.  Further, any failure by the State to adhere to the Smoke Management Plan's policies does not amount to a discrimination claim under the ADA or RA.  Because any such failure by the State would affect the disabled and non-disabled equally, there is no claim of discrimination based on an individual's disability.  Accordingly, the Court concludes the first amended complaint does not state an actionable claim of discrimination under the ADA or RA.

      B.      State's Regulation

The Defendants also argue the complaint fails to state a cause of action because the Plaintiffs allegations seek to require the State to regulate private conduct so as to eliminate or minimize the impact on people with disabilities.  This, the Defendants assert, is not required by either the ADA or RA.  Plaintiffs maintain that without the State's regulation, farmers would not be allowed to burn their fields.  Just the opposite is true.

Field burning is not illegal in Idaho.  The Idaho State Legislature has consistently approved the burning of fields in the State of Idaho.  The State undertook regulations for crop residue disposal beginning in 1985 when it enacted Idaho Code § 39-2301 *et seq* which created a voluntary system for the management of smoke created by field burning.  In 1999, the State enacted the Smoke Management Plan which imposes regulations on farmers engaged in field burning.  <u>See</u> Idaho Code § 22-4801 *et seq*.  When creating the new regulations the Idaho Legislature expressly found that "the current knowledge and technology supporting the practice of burning crop residue to control disease, weeds, pests, and to enhance crop rotations."  Idaho Code § 22-4801.  In creating the Smoke Management Plan, the State considered the benefits of field burning and the concerns of impacted citizens so as to achieve a balance between the two.  <u>See</u> IDAPA 02.06.16.012 ("Idaho farmers to

MEMORANDUM ORDER - Page 9

maintain the essential tool of fire, while minimizing the impact on the citizens of Idaho of smoke generated by crop residue burning.").  The regulations require the enforcement of the State's environmental protection and health act (Idaho Code, Title 39, Chapter 1) and the rules therein as they relate to air quality and the state and national ambient air quality standards.  Idaho Code § 22-4801.  The crop burning statute was amended in 2003 changing the registration and enforcement provisions and adding a new section, Idaho Code § 22-4803A, which increased the penalty provisions for violations of the Smoke Management Plan while also eliminating a private cause of action against those who comply with the regulations for field burning.  Were the State to not have developed a plan for regulating and managing the burning of fields, there would be no limit or restriction on such burning.

Plaintiffs also argue that viable alternatives to field burning exists, such as those adopted by the state of Washington legislature which chose to establish a policy banning the burning of crop residue except in extreme cases.[4]  While the Court is aware of these alternatives, the fact remains that the Idaho State Legislature has seen fit to allow field burning in this state as a method of crop residue disposal and determined that agriculture burning is an important state interest and that burning is an "essential tool" to farming that will continue to be used in the state of Idaho.  See Idaho Code § 22-4801; IDAPA 02.06.16.012.  The Plaintiffs' claims here challenge this conclusion.  Such a challenge is not properly made before this Court.  Regardless of whether this Court agrees or disagrees with the Legislature's findings, the Court cannot and will not second guess the Idaho Legislature's policy decision.  It is outside this Court's authority to force the Idaho Legislature to

---

[4] In 1995, the state of Washington began investigating the health affects of the burning of Kentucky Bluegrass residue on its citizens and possible alternatives to burning.  In 1997, the Washington legislature established a public policy banning the practice of burning in favor of non-burn alternatives.

MEMORANDUM ORDER - Page 10

adopt a policy or make certain findings.  The Plaintiffs must use the legislative process to change the policy regarding crop burning in Idaho.  Simply put, Plaintiffs' disagreement with the regulations fails to state a claim for relief under the ADA or the RA.

The fact that the State allows field burning and the State regulates field burning does not amount to discrimination by the State against the disabled based upon their disabilities; nor has the complaint alleged such.  The complaint instead alleges that the State's failure to accommodate for the disabled is discrimination.  The Court has resolved this argument in favor of the State in the earlier section of this decision.  Further, as stated previously, this is not a case where the State is enforcing regulations upon a disabled individual that unequally burdens the disabled as in McGary, *supra* and Crowder, *supra* but, instead, the regulation is enforced upon the third-party farmers.

C.     The Clean Air Act

The State also argues the claims here raised pursuant to the ADA and RA are improper as it is the Clean Air Act ("CAA"), 42 U.S.C. § 7409 *et seq*, which governs agricultural burning and which addresses the relief requested by Plaintiffs.[5]  To allow Plaintiffs' claims here, the State contends, would essentially require the conclusion that the ADA and RA supersede or repeal the CAA and the air quality standards set forth therein.  The Plaintiffs argue that the CAA does not apply to field burning because it is limited to certain enumerated sources of air pollution and that agricultural burning is left to the states to regulate; noting that the CAA national standards for air quality are simply a minimum level of compliance but that states may impose more stringent air quality levels.  Plaintiffs maintain that their suit here does not seek to alter the national air quality

---

[5] Though the State does note that states cannot enforce their air quality plans in Indian country, such areas are subject to federal or tribal regulation for CAA purposes.

standards or argue that the national standards have not been met, instead they have brought claims of discrimination under the ADA and RA.

Neither the ADA and RA create a substantive right in the disabled to protection from air pollution; air quality protection is found in the CAA. Congress established a comprehensive remedial scheme for the protection of the public health as related to clean air in the CAA. Under the CAA, Congress left to each State the discretion and the power to govern how the national air quality standards would be met within its own boundaries; these standards are designed to protect sensitive populations but not required to protect the most sensitive within a population. See Union Elec. Co. v. E.P.A., 427 U.S. 246, 269 (1976); Train v. Natural Resources Defense Council, Inc., 421 U.S. 60, 79 (1975). The State has likewise decided the means by which to regulate field burning in Idaho through the Smoke Management Plan. Plaintiffs' suit here asks the Court to use the ADA and RA as a vehicle to fashion a remedy outside of these statutory schemes.

The Court will not bypass the legislation enacted by Congress and the State in order to achieve a result that was not contemplated by Congress when it enacted the ADA and RA. While the Plaintiffs have alleged they suffer harm from the smoke generated by field burning, the fact remains that they have failed to allege discrimination as required for a claim under the ADA and RA. Further, the remedy sought by the Plaintiffs may be more appropriately addressed by the CAA and/or may very well require a change in the policy of the State of Idaho regarding field burning. It is not for this Court to second-guess determinations made by Congress and the legislative body of the State of Idaho. The judiciary is not the place for policy changes or fundamental alterations to enacted legislation. Courts are charged with interpreting and enforcing laws. It is the provence of the legislature to enact laws in accordance with the best interests and needs of its citizens. The

MEMORANDUM ORDER - Page 12

research and analysis necessary to address and resolve the Plaintiffs' concerns can and should be undertaken by a legislative and/or administrative bodies who are better suited for such a task.  The State of Idaho has determined that these interests and needs are served by the regulatory scheme for controlling the burning of fields by way of the Smoke Management Plan.  Likewise, Congress promulgated the CAA as the controlling scheme for regulation of air quality.

III.   <u>Leave to Amend</u>:

       In the event the Court determines the pleading does not survive the motion to dismiss, as here, Plaintiffs ask for leave to amend the complaint.  "Dismissal without leave to amend is improper unless it is clear...that the complaint could not be saved by any amendment."  <u>Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.</u>, 368 F.3d 1053, 1060 (9th Cir. 2004) (citations omitted).  However "[a] district court does not err in denying leave to amend where the amendment would be futile."  <u>Id.</u> (citation omitted).  Granting leave to amend in this case would be futile and, therefore, the Court denies Plaintiffs' request.

**ORDER**

       Based on the foregoing, the Defendants' Motion to Dismiss (Dkt. No. 14) is **GRANTED** and the matter is **DISMISSED IN ITS ENTIRETY.**

DATED:  November 14, 2006

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - Page 13